UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KIMBERLY SCHELL,

    Plaintiff,

v.                                                 Case No. 1:16-CV-289

HONORABLE JAMES N. MATTIS,        HON. GORDON J. QUIST
Secretary of Defense,

    Defendant.
_____/

## OPINION

Plaintiff, Kimberly Schell, has sued Secretary of Defense, James N. Mattis,[1] alleging discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (Title VII). Mattis has moved for summary judgment, arguing that Schell has no evidence to support either of her claims. The motion is fully briefed and ready for decision.

For the following reasons, the Court will grant Mattis's motion for summary judgment and dismiss Schell's complaint with prejudice.

### I. FACTS

In 2003, Schell began working for the Disposition Services branch of the Defense Logistics Agency (DLA), an agency of the Department of Defense. Schell remains employed by the DLA. Schell began her career with the DLA as a resource analyst, a position in which she helped to manage the budget, reviewed and updated memoranda of agreement, and handled travel and travel reimbursements, payroll, and other personnel matters. (ECF No. 18-1 at PageID.97.) Disposition

---

[1] James N. Mattis has been substituted for Ashton B. Carter pursuant to Federal Rule of Civil Procedure 25(d).

Services has its headquarters in Battle Creek, Michigan and has several Disposal Service Directorates in the United States and around the world. (*Id.* at PageId.99-100.)

In 2010, DLA created a new directorate to handle disposal operations in the Gulf States, Iraq, and Afghanistan. The new Directorate, called the Central Region, was located in Abu Dhabi, United Arab Emirates. (*Id.* at PageID.31–33.) Schell applied for, and was selected as, the Deputy Director of the Central region. (*Id.* at PageID.32.) At that time, Schell had no prior experience handling property in the ways a Directorate disposes of excess property, including reutilizing, transferring, donating, scrapping, or auctioning property. (*Id.* at PageID.108.)

Schell remained Deputy Director of the Central Region until July 2013. (*Id.* at PageID.108–09.) During that period, the Central Region had several Directors, to whom Schell reported. Rick Brunson was the first Director, followed by Marlowe Burns, Colonel Juan Arcocha, Kemper Watkins, and Colonel Rick Ellis. (*Id.* at PageID.124–128.) Although Schell was made Acting Director a few times in between Directors, she was not temporarily promoted to, and did not assume the responsibilities of, Director. (*Id.* at PageID.118; ECF No. 18-2 at PageID.163.)

In December 2011, while serving as Deputy Director, Schell applied for the position of Supervisory Property Disposal Specialist, a GS-14 position in the Central Region. (ECF No. 18-1 at PageID.112.) Twila Gonzales was the ultimate selecting official for the position. (ECF No. 18-12 at PageID.230.) Schell, another woman, and two men were selected to be interviewed for the position. (ECF No. 18-8 at PageID.209–10.) Gonzales selected the interview panel, which consisted of three individuals: Jerry Rivas, Scott Micklewright, and Brian Moravek. (ECF No. 18-1 at PageID.115; ECF No. 18-9 at PageID.212–13.) The panel conducted three of the interviews, including Schell's, by telephone and one in person. (ECF No. 18-10 at PageID.217.) The format for each interview included Behavior Based Interview Questions and the standard Performance

2

Based Leadership process. (*Id.*; ECF No. 18-11 at PageID.224.) The interviews lasted approximately two hours. (*Id.*)

The panel ultimately concluded that no candidate was ready or suited for the position and recommended that no selection be made. (ECF No. 18-1 at PageID.116; ECF No. 18-12 at PageID.230.) Gonzales accepted that recommendation. (*Id.*) Rivas noted that Schell was unprepared for the interview and had a hard time answering questions. (ECF No. 18-10 at PageID.218.) He also noted that Schell was not very clear on describing her job duties and she could not provide an example about how she dealt with a problem employee. (*Id.*) Rivas believed that Schell needed additional experience operating a large multi-function operation. (ECF No. 18-9.) Moravek said that, although Schell had a strong financial background, she could not articulate a clear vision for the Disposition Services organization or articulate how her efforts were currently shaping the Central Directorate. (ECF No. 18-11 at PageID.224–25.) Micklewright said that Schell needed supervisory experience in a large organization. (ECF No. 18-9.)

On January 27, 2012, Schell filed an Equal Employment Opportunity (EEO) complaint alleging discrimination in connection with her rejection for the Supervisory Property Disposal Specialist position. (ECF No. 1 at PageID.10.) Schell filed additional EEO complaints in August or September of 2012 and in November or December of 2015. (ECF No. 18-1 at PageID.150–51.)

In August 2012, Gonzales hired Major Christopher Johnson as the Director for the Central Region. Gonzales hired Major Johnson because of the long-term strategic benefits of filling the position with a military person. (ECF No. 18-12 at PageID.232.) The plan was to consolidate the Central Region with the Europe/Africa part of the organization, and having a military person in that position would allow for increased flexibility. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). In deciding whether summary judgment is proper, a court may consider "materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56c)(1)(A). However, "it is black-letter law that the party opposing the motion for summary judgment may not rely solely on the pleadings . . . ; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to judgment as a matter of law." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 830 n.7 (6th Cir. 2007) (internal quotation marks and alterations omitted).

## III. DISCUSSION

### A. Abandoned Claims

Schell alleges that she suffered discrimination because: (1) she was not given a performance evaluation and her male counterparts in the theater were given evaluations; (2) she was not promoted

4

to Acting Director like her male counterparts; (3) she was not temporarily promoted to Director like her male counterparts; and (4) Major Johnson was given the position of Director and Schell was not, despite Schell being more qualified than Major Johnson. (ECF No. 1 at PageID.9.) Schell alleges that she suffered the following retaliatory acts because of the EEO complaint she filed in January 2012: (1) Colonel Ellis attempted to give Schell a performance appraisal for 2011 in which most of the competencies were below standard; (2) Colonel Ellis assigned some of Schell's duties to Major Johnson; (3) Major Johnson was promoted to the Director position in August of 2012; (4) Schell was refused the ability to "job show" as part of the soft return in July of 2013; and (5) Schell was asked to reassign to a lower position so that a co-worker could get the skills to be promoted. (*Id.* at PageID.10-11.)

Although Mattis explained in his brief why summary judgment is proper as to all of Schell's alleged adverse actions regarding both her disparate treatment and retaliation claims, Schell did not mention or discuss, or offer any evidence relating to, most of the alleged discriminatory or retaliatory acts in her response. Instead, Schell limits her disparate treatment claim to her allegation that Gonzalez preferred Major Johnson over Schell in giving the Director position to Major Johnson in August 2012. As for her retaliation claim, Schell argues that Colonel Ellis retaliated against her when he initially gave Schell a negative performance evaluation but withdrew it and gave her one that they both agreed on, and Gonzales retaliated against her by hiring Major Johnson for the Director position in August of 2012.

The Sixth Circuit has observed: "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citations omitted). Here, Schell has abandoned her claims to the extent they are based on

5

discriminatory or retaliatory actions, other than as set forth above, by failing to respond to Mattis's arguments and evidence. Nonetheless, the Court has reviewed Mattis's evidence regarding Schell's abandoned claims and also concludes, for the following brief reasons, that there is no genuine issue of fact as to those claims.

Regarding the disparate treatment claim, it is undisputed that Colonel Ellis gave Schell performance evaluations for the 2011 and 2012 ratings periods. (ECF No. 18-1 at PageID.128–29; ECF No. 18-5.) Moreover, Schell cannot establish that Colonel Ellis treated similarly-situated male employees more favorably. (ECf No. 18-1 at PageID.129–30.) Next, Schell conceded that she was, in fact, designated Acting Director several times (*id.* at PageID. 118), and she has not shown that any similarly-situated male was treated more favorably. (ECF No. 18-1 at PageID.104–05.) As for not being temporarily promoted to Director, Schell cannot show that a similarly-situated male employee was treated more favorably by being temporarily promoted to Director. (*Id.*) Finally, Schell's non-selection for the Supervisory Property Disposal Specialist position in December 2011 cannot serve as the basis for a discrimination claim because she was not treated differently than the male candidates; no individual, male or female, who interviewed for the job was hired.

As for the retaliation claim, Schell cannot show that the alleged transfer of duties to Major Johnson constituted an adverse action because it did not result in a materially adverse change in the terms or conditions of Schell's employment. *Bowman v. Shawneee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000). Moreover, as to any alleged retaliation, as explained more fully below, Schell has no evidence that any decisionmaker who took an alleged adverse action was aware of Schell's protected activity. (ECF No. 18-3 at PageID.176.)

B.  **Disparate Treatment**

Schell lacks direct evidence of discrimination and, therefore, must establish her claim using circumstantial evidence through the burden-shifting framework known as the *McDonnell Douglas* test. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). To make out a prima facie case of discrimination based on denial of a promotion, a plaintiff must show that: (1) she is a member of a protected class; (2) was objectively qualified for the promotion sought; (3) was considered for but denied the promotion; and (4) the individual selected for the promotion was outside of the plaintiff's protected class. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584–85 (6th Cir. 2009). If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse action. *Griffin v. Finkbeiner*, 689 F.3d 584, 592–93 (6th Cir. 2012). Once the employer offers such a reason, the burden of production returns to the plaintiff to show that the employer's proffered reason was pretext. *Id.* at 593. Pretext can be established by showing that: (1) the employer's reason has no basis in fact; (2) the proffered reason did not actually motivate the employer's conduct; or (3) the proffered reason was insufficient to warrant the challenged conduct. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

As noted, Schell's disparate treatment claim is based on the hiring of Major Johnson in August 2012—eight months after Schell was initially denied the promotion and seven months after she filed her EEO complaint. Schell fails to establish a prima facie case. Although Schell meets the first and third elements, she has not presented any admissible evidence that she was qualified for the position. Mattis has presented evidence that the interview panel concluded that Schell was not qualified for the position. Schell *argues* that she was qualified for the position, but she relies almost exclusively on her complaint to support her argument. However, at the summary judgment

7

stage, "[t]he party opposing . . . summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Walker v. Eyke*, 417 F. App'x 461, 463 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). Schell has failed to present any admissible evidence to rebut Mattis's evidence that Schell was not qualified for the position.[2]

Even assuming that Schell could establish a prima facie case of discrimination, Schell has failed to rebut Mattis's legitimate reasons for not hiring Schell. First, as mentioned above, in December 2011, the interview panel found Schell not qualified for the position. Second, in August 2012, Gonzales selected Major Johnson to serve as Director because of the long-term strategic benefits of having a military person in that position. It is undisputed that Schell was a civilian, not military, employee. Schell offers no admissible evidence to show that Mattis's reasons for promoting Major Johnson, rather than Schell, are pretext for unlawful discrimination. Accordingly summary judgment is proper.

**C.    Retaliation**

Schell's retaliation claim fails for two basic reasons. First, in order to establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show not only that she engaged in protected activity, but also that the person who took the adverse action was aware of the plaintiff's protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *see also Laney v. Ohio Dep't of Youth Servs.*, 719 F. Supp. 2d 868, 882 (S.D. Ohio 2010) (noting that "the uncontroverted evidence shows that the [sic] Superintendent Wayne, the individual who made the decision to terminate Laney, was not aware that she had spoken to human resources staff regarding her

---

[2]It is not even clear to the Court that the position Major Johnson was given was the same position that Schell sought in December 2011. Schell applied for the position of Supervisory Property Disposal Specialist, while Schell alleges that Major Johnson was hired as the Director of the Central Region. (ECF No. 1 at PageID.9.) However, the parties appear to agree that they are the same position.

allegations of discrimination and harassment" and that temporal proximity alone cannot suffice to show that the decisionmaker was aware of the plaintiff's protected activity). Here, in response to Mattis's discovery requests, Schell failed to identify any person who knew that she engaged in protected activity. (ECF No. 18-3 at PageID.176.) Schell also has presented no evidence in her response that either Colonel Ellis or Gonzalez was aware of Schell's EEO complaint when they took the alleged adverse actions in 2012.[3] Instead, Schell argues that "[i]t is reasonable to assume that both of these people in supervisory positions that were directly implicated by the Complaint knew of Plaintiff's protected activity," but she cites no authority for the proposition that a court may assume that a decisionmaker is aware of protected activity simply by virtue of the decisionmaker's supervisory position. (ECF No. 20 at PageID.280.) In the absence of evidence showing that either individual was aware of Schell's EEO complaint, Schell's retalition claim fails as a matter of law.

Second, particularly with regard to Gonzalez's hiring of Major Johnson in August 2012, Schell relies solely on temporal proximity to establish causation. However, the Sixth Circuit has said that "temporal proximity alone may suffice to show a causal connection" only "in rare cases." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). This is not a "rare case." Gonzales hired Major Johnson seven months after Schell filed her EEO complaint. Absent other evidence bearing on causation, Schell's reliance solely on temporal proximity is not enough to avoid dismissal. *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (actions that occurred two to five months after the plaintiff filed charges were too "tenuous" without additional evidence to create an issue for the jury); *see also Nicholson v. City of Clarksville*, 530 F. App'x 434, 447 (6th cir. 2013)

---

[3] The Court does not intend to imply that Colonel Ellis's act of initially presenting an unfavorable performance evaluation but ultimately issuing a fully successful evaluation, with which Schell agreed, constitutes an adverse action. It is difficult to see how a fully successful performance review could be considered adverse.

9

(noting that "a prima facie case based on temporal proximity alone requires a short period of time between the protected activity and the adverse employment action, 'usually less than six months'" (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000))).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mattis's motion for summary judgment and dismiss Schell's complaint with prejudice.

Dated: August 31, 2017       /s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

4